IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

**SHIRLEY MOORE,**

        Plaintiff,

  v.

**WAL-MART STORES, INC.,**

        Defendant.

Case No. 15-CV-5141

Judge Samuel Der-Yeghiayan Magistrate Judge Jeffrey Cole

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This is a classic case of sexual harassment. Defendant's employee, Robert Rudd, who had a sexual interest in plaintiff, volunteered to fill out her application for emergency assistance for her, assured he could fill out in such a way that it was granted, caressed her thigh, and then assured her that he could fill out the form successfully if he received sufficient "encouragement." If this is not sexual harassment, it would be hard to say what is. The use of raw management power to extract, and attempt to extract, a sexual favor from a subordinate, cannot be condoned. The motion for summary judgment should be denied and this case should go to a jury.

**II.    FACTUAL BACKGROUND**

Plaintiff incorporates herein its filed response under Rule 56.1(B)(3) contemporaneously herewith pursuant to Local Rule 56.1(a)(3). Defendant's uncontested facts are designated herein as SOF and Plaintiff's additional uncontested facts as PAF.

1

**III. ARGUMENT**

    **A. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

    **B. Walmart Is Not Entitled To Judgment As a Matter of Law.**

Under the Illinois Human Rights Act ("IHRA"), a plaintiff must only must prove that (1) she was subjected to sexual verbal or physical conduct, (2) the conduct was unwelcome, and (3) the conduct had the purpose or effect of (4) either (a) substantially interfering with her work performance or (b) creating an intimidating, hostile, or offensive working environment. *Trayling v. Bd. of Fire & Police Comm'rs of Vill. of Bensenville*, 652 N.E.2d 386, 393 (Ill. App. Ct. 1995). Additionally, courts "should determine whether conduct is 'severe or pervasive' enough 'to create an objectively hostile or abusive work environment.'" *Id.* at 394 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Thus, sexual harassment "only exists when the working environment is hostile or abusive when viewed both objectively and

2

subjectively." *Id.* In other words, "the working environment must be hostile or abusive to a reasonable person and the individual alleging sexual harassment must have actually perceived the environment to be hostile or abusive." *Id.*

Walmart is not entitled to judgment as a matter of law because there is at least a question of material fact as to whether the improper conduct was undertaken "because of" Plaintiff's sex, and whether it was severe or pervasive.

### 1. Robert Rudd's Misconduct Was Motivated by, and "Because of" Plaintiff's Sex.

Defendant argues that plaintiff's claims of inappropriate conduct -- which it acknowledges must be taken as true for the purpose of the motion -- were not engaged in "because of" Plaintiff's sex. (Def. Mem., at 3-6). Defendant is wrong.

It should be remembered that plaintiff is describing a series of interlinked events which are clearly related to her "sex": (1) Rudd's comments about plaintiff's pants "fitting nicely," which occurred two to three times a week and were made in conjunction with his remark that if she could look into his eyes she would know what he was thinking,(SOF ¶ 39), (2) Rudd's act of volunteering to fill out plaintiff's request for emergency assistance, (PAF ¶ 1), (3) Rudd's statement that he had special expertise in filling out the request and could fill the request out in such a way that it would be granted (PAF ¶ 3) (4) Rudd's act of caressing plaintiff's inner thigh while telling her that he could insure that her application for emergency assistance was granted, SOF ¶ 51), (5) Rudd's statement that he could fill out the form in such a way that the application would be granted if he received "encouragement," (SOF ¶ 51),and (6) Rudd's request to

3

plaintiff that she call him at his home number. (PAF ¶ 8). In combination, these circumstances sufficiently raise an issue of material fact as to whether Rudd took these actions "because of" plaintiff's sex.

Defendant first claims that Rudd's comments about her clothes constituted some form of uniform inspection. (Def. Mem., at 4-5). This fanciful explanation is belied by the facts. First, defendant does not explain why a uniform inspection would be performed at random, two or three times a week, as plaintiff was moving about the workplace, and would only include comments about plaintiff's pants, as opposed to other aspects of her attire. Second, defendant does not explain why a uniform inspector would tell the person inspected that if she looked into his eyes she would know what he was thinking. Third, when plaintiff complained to CSM Stephanie Davis, Davis herself described Rudd's actions and comments as flirtation, not uniform inspection. (SOF ¶ 43.) The idea that Rudd's actions "may" have had some legitimate purpose at best raises a question of fact for the jury.

The case of *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 464 (7th Cir. 2002) is distinguishable. In *Hilt-Dyson*:

"Ms. Hilt–Dyson subjectively considered the incident severe enough to create a hostile work environment. In arguing that a reasonable juror would reach the same assessment when evaluating the event objectively, she relies on her own account of the inspection and the statement of another officer that, in his opinion, the lieutenant's order that she raise her hands over her head constituted a "demeaning order." R.27, Ex.4. *As noted earlier, we cannot divorce conduct from the context in which it occurred. Sutherland did not order Ms. Hilt–Dyson to lift her arms and to turn over her hat for inspection during a routine workday. To the contrary, the directions were given as part of a uniform inspection—an event that by its nature involves scrutiny of an officer's clothing and equipment in an effort to ensure that the CPD's officers meet uniform requirements and are prepared to fulfill their responsibilities. In this context, inspection of gun belts and uniform caps, as well as increased scrutiny of a subordinate's blazer, may serve a legitimate purpose. Discipline in police departments is quasi-military in nature and sworn officers expect to participate in inspections, drills and other activities that create superior-subordinate encounters not found in civilian occupations.* Many of these encounters, especially inspections, are often unpleasant and, in the eyes of the subordinate, demeaning. On the other hand, those in authority in such organizations still have the obligation, within the context of the legitimate demands imposed by their responsibilities, to comply fully with the law protecting the civil rights of their subordinates. The inspection process neither gives a commanding officer license to leer at the chest of a female subordinate nor the authority to single out a female officer for increased scrutiny because of her

sex. Mindful of our obligation to assess the record in the light most favorable to Ms. Hilt–Dyson, it is indeed a close call as to whether the record would support a determination that Sutherland's actions during the inspection can be characterized as an effort to demean her on account of her sex."
282 F.3d at 464 (Emphasis supplied).

Here, of course, the supposed "uniform inspection" occurred during a routine workday, not during a formal inspection, and plaintiff was a civilian, not a member of a quasi-military police organization. If the question of whether the plaintiff in *Hilt-Dyson* was subjected to discrimination on account of sex was a "close call," here the question is not close at all. Whether Rudd's comments, standing alone, would create an intimidating, hostile, or offensive working environment or would, instead constitute non-actionable "flirting" is a question of fact for the jury; but even assuming that this actions were only "flirting" they need to be considered in conjunction with Rudd's sexual aggression when he volunteered to help plaintiff with her request for emergency assistance.

As to this later incident, defendant maintains that "while touching Plaintiff's thigh was admittedly improper," it is "clear that Rudd was merely trying to comfort Plaintiff." (Def. Mem., at 6). Although this is an argument defendant is free to make to the jury, there is more than enough evidence to the contrary to defeat the motion for summary judgment. Given: (1) Rudd's prior sexual interest in plaintiff, (SOF ¶ 39) , (2) his unexplained decision to volunteer to fill out the request for emergency assistance (PAF ¶ 1) (3) his statement that he had special expertise in filling out the request and could fill the request out in such a way that it would be granted (PAF ¶ 3) (4) his act of improperly caressing plaintiff's inner thigh while telling her that he could insure that her application for emergency assistance was granted (SOF ¶ 51) , (5) his statement that he could fill out the form in such a way that the application would be granted if he received "encouragement," (SOF ¶ 51) and (6) his request to plaintiff that she call him at his home number (PAF ¶ 8) , a jury could conclude that Rudd was discriminating against plaintiff based

upon her sex. Moreover, a reasonable person in plaintiff's position, knowing the same facts, could reasonably conclude that Rudd was suggesting that he could fill out the form and get her the emergency benefit if she allowed him to grope her. Particularly since the defendant has not presented any counter evidence from Rudd himself, plaintiff's testimony is more than sufficient to raise and issue of material fact as to whether Rudd took these actions "because of" plaintiff's sex.

> **2. Rudd's Misconduct was Sufficiently Severe to Constitute Actionable Harassment**

The defendant argues that Rudd's actions were not "severe or pervasive" enough to sustain a claim of sexual harassment. Defendant is wrong.

To understand why this is true, consider the following hypothetical. If a male supervisor, on a single occasion, offered to give a female supervisee a raise if she went to bed with him, would any court fail to find this conduct constituted "sexual harassment"? The answer clearly must be no. In this case, as outlined above, Rudd's action, although it involved only one incident of inappropriate touching, was linked with a prior pattern of sexual interest and a clear suggestion that plaintiff could get an employment benefit if she allowed herself to be groped. This is classic sexual harassment, and is sufficiently severe to warrant a jury trial.

None of the cases cited by defendant involve this combination of a sexual advance linked to an employment benefit. See *Hilt-Dyson*, 282 F.3d at 459, 460, 463-64 (finding no actionable harassment where plaintiff alleged two incidents in which her supervisor touched and rubbed her back and squeezed her shoulder, and a single incident during a uniform inspection in which he stared at her chest and ordered her to raise her arms); *Adusumilli*, 164 F.3d at 361-62 (affirming summary judgment for defendant where alleged harassment included ambiguous comments about low-neck tops and eating bananas, staring and attempts

to make eye contact, and four isolated incidents in which a co-worker briefly touched plaintiff's arm, fingers, or buttocks); *Koelsch*, 46 F.3d at 706, 708 (affirming summary judgment for defendant where alleged harasser's conduct included removing his shoe and rubbing plaintiff's leg with his foot, grabbing plaintiff's buttocks, telling plaintiff that he found her attractive and could not control himself in her presence, and asking plaintiff to go out with him); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 528, 534-35 (7th Cir. 1993) (affirming summary judgment for defendant where plaintiff alleged that her supervisor placed his hand above her knee several times, once rubbed her upper thigh, kissed her on one occasion, and "lurched" at her and tried to grab her on another); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (finding no actionable harassment where alleged harasser's conduct included asking plaintiff out on dates, putting his hand on her shoulder several times, placing "I love you" signs in her work area, and attempting to kiss her on one or more occasions). All of these cases involved bad behavior by supervisors, but none of the cases involved supervisors who tied their sexual advances to an employment benefit.

 Therefore, the motion for summary judgment should be denied.

## IV. CONCLUSION

As demonstrated above, Defendant has not sustained its burden of showing that there are no trial issues of fact. The motion for summary judgment should be denied.

                                            Respectfully submitted,

                                            By:        /s/ Stephen L. Richards

                                            Attorney for Shirley Moore

Stephen L. Richards
6191946
Joshua S.M. Richards
651 west Washington Suite 205
Chicago, IL  60654
773-817-6927

Dated: October 18, 2016

## **CERTIFICATE OF SERVICE**

I, Stephen L. Richards an attorney, hereby certify that, on October 18, 2016, I caused a copy of the foregoing motion to be filed electronically with the Clerk of the Court using the Court's CM/ECF system.

*/s/ Stephen L. Richarsd*
Stephen L. Richards